IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TANK 1 SERVICES, LLC, | § | CASE NO. 15-20241 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**DEBTOR'S EMERGENCY MOTION TO (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION, (II) PAY PREPETITION EMPLOYEE PAYROLL TAXES AND BENEFITS AND CONTINUE BENEFIT PROGRAMS IN THE ORDINARY COURSE AND (III) DIRECTING BANKS TO HONOR CHECKS FOR PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS**

**AN EMERGENCY HEARING HAS BEEN REQUESTED FOR MONDAY, JUNE 22, 2015, AT 2:45 P.M. CORPUS CHRISTI.**

**IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Tank 1 Services, LLC (the "Debtor" or "Tank 1") files this *Emergency Motion to (I) Pay Prepetition Employee Wages, Salaries, and Other Compensation, (II) Pay Prepetition Employee Payroll Taxes and Benefits and Continue Benefit Programs in the Ordinary Course and (III) Directing Banks to Honor Checks for Payment or Prepetition Employee Obligations* (the "Motion") and respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Court's consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district under 28 U.S.C. § 1408.

### PROCEDURAL BACKGROUND

2. On June 21, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.  The Debtor remains in possession of its property and is operating its business as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed in this chapter 11 case.

### FACTUAL BACKGROUND

3. Debtor is the owner and operator of oil field service equipment with its principal office in Corpus Christi, Texas.  Debtor's primary business was to provide storage tanks to well operators and service companies in the Maverick Basin in South Texas, the Fort Worth Basin in North Texas, and the Permian Basin in West Texas.

4. Beginning in approximately 2013, the Debtor began experiencing financial difficulties due to price competition and various operational issues, and suffered significant losses.  On August 20, 2014 the Debtor retained Enerecap Partners, LLC ("Enerecap") to explore opportunities to restructure the company.  As of December, 2014 Enerecap had successfully returned the company to operating profitability on an adjusted EBITDA basis, however, the subsequent collapse in oil prices and the resulting decline of the business climate completely undercut their efforts.  The Company's board of managers determined, after significant deliberation, that the best way to maximize the value of the Company's assets for creditors was to wind down operations.  Significant cost cuts were implemented, leased equipment was returned, staff was laid off, and restructuring counsel was retained.

5. Debtor's secured lender Texas Champion Bank ("Texas Champion") is owed approximately $3 million.  Texas Champion has a senior lien on all the Debtor's assets with the possible exception of certain real estate the Debtor owns in Karnes County, where a senior lien is held by the Internal Revenue Service ("IRS") for approximately $800,000 in unpaid payroll

taxes that were all incurred before Enerecap was retained.

6.     Both Texas Champion and the IRS were generally cooperative with the Debtor's wind down process, however, on or about May 27, 2015, the IRS notified Debtor that it would seize all the Debtor's assets on June 22, 2015, unless the unpaid taxes were paid in full, triggering the filing of this Chapter 11.

7.     Additionally, Dragon Products has obtained a default judgment against the Debtor for approximately $1 million, and the Debtor recently learned that the Karnes County sheriff was in possession of a writ of execution. Debtor believes that as of the petition date the writ had not been executed.

8.     In the meantime, Debtor was in discussions with various parties concerning a possible sale of the Debtor's assets, and believes that Texas Champion is also in discussions with a potential buyer about a consensual sale that would include release of Texas Champion's liens.

9.     The Company continues to operate albeit on a very limited basis. Currently there is 1 salaried person in Corpus Christi, 1 in Runge, and 1 in Bowie, and 9 full time hourly employees.

10.    The Company's real estate in Karnes County is currently listed for sale at an asking price of $350,000. Debtor also leases office space in Corpus Christi, a yard in Bowie (North Texas) and a small yard in Stanton (Midland – West Texas), all on a month to month basis.

11.    The Debtors intend to file motions to seek approval to retain Enerecap; Lone Star Real Estate, LLC of Kenedy, Texas, the current listing agent for the Debtor's Karnes County, Texas property; and the undersigned as Debtor's bankruptcy counsel. The Debtor intends to

use the bankruptcy 363 sale process to effect a sale of its assets and maximize the value of the estate to all its creditors.

## FACTS SUPPORTING THIS MOTION

**A.     Pay And Benefits**

12.    As of the Petition Date, Debtor has 12 regular full-time employees (the "<u>Employees</u>").

13.    Debtor pays the Employees bi-weekly, exclusive of deductions and exclusions.

14.    As of the Petition Date, the aggregate amount of accrued prepetition wages and salaries that remain unpaid to the Employees is approximately $23,000 (the "<u>Unpaid Wages and Salaries</u>").[1]

15.    No single employee that the Debtor seeks to pay is owed more than $12,475 in pre petition Unpaid Wages and Salaries.  See 11 USC §507(a)(4).

16.    Debtor is not seeking to pay prepetition wages to management.

17.    Employee wages are paid on Friday for the two weeks ending the previous Saturday, in arrears.   Friday, June 26, 2015, is a regular payday for the two weeks ending Saturday, June 20, 2015.  Thus, as of the Petition Date, the Company owes its employees for their work from Sunday, June 7 to Saturday, June 20, the pay for which will be due on June 26th.

---

[1] The calculation of Unpaid Wages and Salaries incorporates payments owing on account of wages and salaries. The calculation does not attempt to incorporate amounts for other benefits, including sick leave, accrued vacation pay, and health and dental benefits.  Further, the calculation does not include expense reimbursement amounts, which the Debtors do not consider compensation.

18. Employees at Tank 1 earn Paid Time Off, sick leave, and various other employment related benefits. Debtors seek approval to honor, in its discretion, its obligations to Employees for these employment related benefits.

**B.      Reimbursable Expenses**

19. In the ordinary course of business, the Debtors reimburse employees for certain expenses incurred while performing their duties on the Debtor's behalf (the "<u>Reimbursable Expenses</u>"). The outstanding amount of Reimbursable Expenses is de minimus.

### RELIEF REQUESTED

20. To preserve the value of the Debtor's business as well as to prevent the disruption the business will suffer if prepetition employment-related obligations are not paid when due or as expected, as well as to maintain morale of the Debtor's employees during this critical time, the Debtor requests entry of an order authorizing, but not directing,[2] the Debtor to pay the prepetition Employee Wages and Benefits and to continue to honor the Employee Wages and Benefits in the ordinary course of business. In addition, the Debtor seeks confirmation that it is permitted to pay to third parties any and all amounts deducted from employee paychecks for payments on behalf of employees, including, without limitation, charitable contributions, support payments, tax levies, benefit plans, insurance programs, and other similar programs.[3]

---

[2] Although the Debtor seeks authority to make the requested payments, it does not believe the Court should direct it to pay any specific claim. Additionally, notwithstanding anything in this Motion to the contrary, the payment of any claims pursuant to the Order (if entered by this Court) shall not constitute approval by this Court of any employee plan or program.

[3] By this Motion, the Debtor does not seek to modify the terms of any Employee Benefits programs and does not seek to assume or reject any Employee Benefits program to the extent that such Employee Benefits program is deemed to be an executory contract within the meaning of Section 365 of the Bankruptcy Code. Similarly, nothing in this Motion should be construed as a request for authorization to assume or reject any executory contract between the Debtor and any party with respect to the Employee Wages and Benefits. Furthermore, this Motion shall not be construed to limit, or in any way affect, the Debtor's right to contest on any grounds the amount claimed to be due as Employee Wages and Benefits. The Debtor does not waive the right to modify or terminate

21. To assist in the implementation of the relief requested, the Debtor further requests that its banks be authorized to honor prepetition checks, wire transfers, automated clearing house payments, electronic payments, or other similar methods of payment for payment of Employee Wages and Benefits, regardless of whether such checks or wires were drawn prior to or after the Petition Date. The Debtor also seeks authorization to reissue prepetition checks or wires for payments approved by this Motion that are dishonored notwithstanding the foregoing authorizations.

## BASIS FOR RELIEF

22. It is essential that the Debtor continues to honor its Employee Wages and Benefits obligations to ensure the continued operation of the Debtor's business and to maintain the morale of its employees. The Debtor faces the imminent risk that operations may be severely impaired if they are not immediately granted authority to honor and continue to honor the obligations described in this Motion. Further, absent the requested relief, many of the Debtor's employees may be unable to meet personal obligations, may be left without medical insurance, or may seek alternative employment opportunities, perhaps with the Debtor's competitors. Honoring the Employee Wages and Benefits obligations will, therefore, minimize the level of disruption and preserve the employee loyalty necessary to maintain the Debtor's operations during this bankruptcy case.

23. As further described below, the relief requested in this Motion is predicated on sections 105(a), 363(b), 507(a)(4), 507(a)(5), 1107(a), and 1108 of the Bankruptcy Code.

---

any Employee Benefits program to the extent that such right exists under the terms of the Employee Benefits program or as may be permitted or required by applicable law or further order of the Bankruptcy Court.

A.   **Payment of the Employee Wages and Benefits Obligations is Appropriate in the Debtor's Management of Their Business Operations Under Sections 1107 and 1108 of the Bankruptcy Code**

24.   In conducting business as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are fiduciaries "holding the bankruptcy estate[s] and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ*, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.

25.   Courts have noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a pre-petition claim." *Id*.; *see also In re Mirant Corp*., 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to continue their respective business). The *CoServ* court specifically noted that preplan satisfaction of pre-petition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

26.   Payment of each aspect of the Employee Wages and Benefits obligations meets each element of the *CoServ* court's standard. As described above, the employees likely maintain priority claims against the Debtor for [a substantial part or all] of the Employee Wages

and Benefits obligations. In addition, and more importantly, any failure by the Debtor to pay the Employee Wages and Benefits obligations would pose a real and substantial risk of loss of critical services now performed by the Debtor's employees [and Temporary Contractors] at a critical time for the Debtor and its business. The potential harm and economic disadvantage that would result from the failure to pay the Employee Wages and Benefits obligations is grossly disproportionate to the amount of any pre-petition claim that may be paid. The Debtors have determined that there exists no practical or legal alternative to payment of such obligations. Therefore, the Debtor can only meet its fiduciary duties as debtor-in-possession under Bankruptcy Code Sections 1107(a) and 1108 by payment of the Employee Wages and Benefits obligations.

**B.      Payment of the Employee Wages and Benefits Obligations is Appropriate Under Section 363 of the Bankruptcy Code**

27.     Section 363 of the Bankruptcy Code empowers the bankruptcy court to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. *See Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (holding that Section 363(b) requires that "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) (applying *Continental Airlines* to require "articulated business justification" for Section 363 transaction); *U.S. Trustee v. Bethlehem Steel Corp. (In re*

*Bethlehem Steel Corp.)*, No. 02 Civ. 2954, 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) ("To approve a transaction under §363(b), the Bankruptcy Court must find that there is a good business reason to allow the transaction").

28.     Payment of the Employee Wages and Benefits obligations, as set forth herein, serves the sound business purpose of maintaining the Debtor's business operations and maximizing the value of the Debtor's estate.  Non-payment of the Employee Wages and Benefits obligations would jeopardize the Debtor's success in these cases, as such success hinges in large part on the morale and continued efforts and dedication of their employees. Accordingly, the Court should grant the requested relief under Section 363 of the Bankruptcy Code.

**C.     Payment of Employee Wages and Benefits Claims Will Not Materially Prejudice Other Creditors Because Such Claims Would Be Afforded Priority Under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code**

29.     Because claims for the prepetition Employee Wages and Benefits (up to the statutory cap discussed below) would be entitled to priority treatment under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, payment of such claims would not materially prejudice other creditors.  Pursuant to section 507(a)(4) of the Bankruptcy Code, each employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $11,725 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)     wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . .

11 U.S.C. § 507(a)(4).

30.     Section 507(a)(5) of the Bankruptcy Code accords priority in payment for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B) for each such plan, to the extent of –
>
> > (i) the number of employees covered by each such plan multiplied by $11,725; less
> >
> > (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).[4]

31. Claims for Unpaid Compensation below the $11,725 section 507(a)(4) cap are entitled to priority treatment at the conclusion of these cases, [and as noted above the Debtors expect all employees to have Unpaid Compensation claims below $11,725.] Similarly, to the extent other Employee Benefits are entitled to priority status under section 507(a)(5) of the Bankruptcy Code, the relief requested in this Motion will only change the timing, and not the amount, of the payment of such claims. Therefore, granting the relief requested in this Motion is consistent with the Bankruptcy Code's purpose of ensuring that employees are paid in full up to the statutorily imposed limit due to the priority status of their claims.

---

[4] The costs of administering employee benefits programs also are entitled to priority under section 507(a)(5) of the Bankruptcy Code. *See Allegheny Int'l, Inc. v. Metro. Life Ins. Co.,* 145 B.R. 820, 822 (W.D. Pa 1992). In *Allegheny,* the court found that prepetition fees of a plan administrator were entitled to priority under former section 507(a)(4) of the Bankruptcy Code. Id. The court stated "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans." Id. at 822-23.

**D.     The Court May Rely on the "Necessity of Payment" Doctrine and its General Equitable Powers to Grant this Motion**

32.    Section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) operates "to facilitate the implementation of other Bankruptcy Code provisions," and in so doing it provides a "bankruptcy court with broad authority to exercise its equitable powers." *Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43 (1st Cir. 2008) (internal citations omitted). These equitable powers are granted to effectuate the policies and goals of chapter 11 reorganization, which are to rehabilitate the debtor, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989), and to "create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately." *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987); *see also In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) (rejecting a bright line rule prohibiting payment of prepetition debts because it "may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code").

33.    Under the "doctrine of necessity" or "necessity of payment" rule, first articulated in *Miltenberger v. Logansport C. & S.W. R. Co.*, 106 U.S. 286 (1882), bankruptcy courts can exercise these equitable powers "to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 493 (Bankr. N.D. Tex. 2002) ("[W]age claims typically are payable out of necessity as well as by virtue of their priority."); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000).

34. Courts in the Fifth Circuit have found exceptions to the "general rule of nonpayment" found in *In re Oxford Mgmt., Inc.*, 4 F.3d 1329 (5th Cir. 1993) based on "common sense and the presence of a legal or factual inevitability of payment." *In re CEI Roofing, Inc.*, 315 B.R. 50, 58 (Bankr. N.D. Tex. 2004) (quoting *Equalnet Commc'ns*, 258 B.R. at 369. One such exception is the payment of employee wage claims and certain tax claims that "enjoy a priority status in addition to being sometimes critical to the ongoing nature of the business." *Id*.; *CoServ*, 273 B.R. at 497 (holding that there are occasions when the debtor-in-possession's fiduciary duty to protect and preserve the estate "can only be fulfilled by the preplan satisfaction of a prepetition claim").

35. As payment of the Employee Wages and Benefits obligations is critical to the continued value and operation of the Debtor's business, application of this Court's section 105(a) powers and the doctrine of necessity is appropriate in this case.

**E.  This Court is Authorized to Approve Payment of the Employee Wages and Benefits Obligations Early in the Debtor's Bankruptcy Case Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure**

36. Further, Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") provides that the bankruptcy court may grant relief early in a bankruptcy case to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." where such relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Thus, Rule 6003 specifically contemplates granting relief to honor prepetition claims where necessary to preserve the estate and the debtor's prospects for reorganization and provides guidance on whether such authority should be granted immediately or delayed. And as set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor—accordingly, immediate approval is appropriate.

**F.     Applicable Bankruptcy and Non-Bankruptcy Law Requires
Payment and Continuation of Certain of the Employee Wages and Benefits**

37.     The Deductions and Payroll Taxes principally represent employee earnings that governments (in the case of taxes), employees (in the case of voluntarily withheld amounts), and judicial authorities (in the case of any involuntarily withheld amounts) have designated for deduction from employees' paychecks. If the Debtor does not remit those amounts, the employees may face legal action and the Debtor may be burdened by inquiries and disputes concerning their failure to submit legally required payments, which will undoubtedly affect employee performance and negatively impact the Debtor's reorganization efforts to the detriment of all parties in interest.

38.     The Debtor is required by law to make the Payroll Tax deductions. To the extent that the Debtor has collected any Payroll Taxes from their employees, such amounts may be held in trust for the benefit of the governmental authorities imposing the tax. The Debtor's estate would have no equitable interest in such "trust fund" taxes and these amounts would not be property of the Debtor's estate. *See Beiger v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *In re Al Copeland Enter., Inc.*, 991 F.2d 233, 237 (5th Cir. 1993) (providing that the person who collects tax revenues holds them in trust for the benefit of the state); *DuCharmes & Co. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 195-96 (6th Cir. 1988) (noting that "individual officials of an employer who fail to pay over [federal withholding] taxes that have been withheld are subject to personal liability"). The Payroll Tax Obligations are also likely entitled to priority status under section 507(a)(8). *See* 11 U.S.C. § 507(a)(8).

**G.     Similar Relief Has Been Granted by Courts in This District and Neighboring Districts**

39.     Numerous courts, including this Court, have permitted the payment of pre-petition compensation, benefit and expense reimbursement obligations on the first day or in the early stages of other Chapter 11 bankruptcy cases. *See, e.g.*, *In re ATP Oil & Gas Corp.*, Case No. 12-36187 (MI) (Bankr. S.D. Tex. 2012) [Docket No. 136]; *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455 (RBK) (Bankr. W.D. Tex. Feb. 5, 2009) [Docket No. 48]; *In re Pilgrim's Pride Corp.*, Case No., 08-45644 (DML) (Bankr. N.D. Tex. Dec. 2, 2008) [Docket No. 65]; *In re Scotia Development LLC*, Case No. 07-20027(RSS) (Bankr. S.D. Tex. Jan. 24. 2007) (Docket 73]; *In re The Bombay Co., Inc.*, Case No. 07-44084 (DML) (Bankr. N.D. Tex. Sept. 20, 2007) [Docket No. 64]; *In re CEI Roofing, Inc.,* Case No. 04-35113 (HDH) (Bankr. N.D. Tex. May 5, 2004) [Docket No. 42].

40.     As discussed above, payment of the Employee Wages and Benefits represent is necessary to retain the skilled and motivated workforce necessary to operate the Debtor's businesses.  Accordingly, based on the foregoing, the Debtor submits that the requested relief is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

**PAYMENT OF CHECKS ISSUED
AND OTHER TRANSFERS MADE IN RESPECT OF THE EMPLOYEE WAGES AND BENEFITS**

41.     The Debtor pays the Employee Wages and Benefits with funds drawn by checks (the "Checks") or by means of electronic fund transfers (the "Electronic Transfers").  Before the Petition Date, the Debtors sent certain parties Checks or Electronic Transfers on account of Employee Wages and Benefits that may not have cleared as of the Petition Date.

42.     To the extent any Check or Electronic Transfer has not cleared as of the Petition Date, the Debtor requests the Court authorize the banks, in the Debtor's sole discretion, to

receive, process, honor, and pay the Checks or Electronic Transfers. If any party has not received payment for amounts owed on account of any Employee Wages and Benefits, the Debtors seek authority to issue replacement Checks, re-issue Electronic Transfers, or otherwise make payments on account of Employee Wages and Benefits from the Debtor's new, postpetition bank accounts. The Debtor represents that each of the Checks and Electronic Transfers can be readily identified as relating directly to the authorized payment of amounts owed on account of Employee Wages and Benefits. Accordingly, if the relief requested is granted, Checks and Electronic Transfers other than those relating to authorized payments will not be honored inadvertently.

## WAIVERS

43. Because the relief requested herein is necessary to avoid immediate and irreparable harm, to the extent required for the immediate implementation of the relief requested herein, the Debtors seek a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a), (ii) the requirements of Bankruptcy Rule 6003(b), and (iii) the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

44. In compliance with Bankruptcy Local Rule 9013(f), the Debtor will file as a separate document a Certificate of Service containing the names and addresses of the parties served, the manner of service, the name and address of the server, and the date of service.

WHEREFORE, the Debtor respectfully requests that this Court enter an order, in substantially the form submitted with this Motion: (i) authorizing, but not directing, the Debtor to pay the prepetition Employee Wages and Benefits and to continue to honor the Employee Wages and Benefits in the ordinary course of business; (ii) authorizing, but not directing, the Debtor to make payments as requested in this Motion and to reissue checks, wire transfers,

automated clearing house payments, electronic payments, or other similar methods of payment for such payments where such method of payment has been dishonored postpetition; (iii) directing all banks to honor the Debtor's prepetition checks, wire transfers, automated clearing house payments, electronic payments, or other similar methods of payment for payment of Employee Wages and Benefits; and (iv) granting such other and further relief as is just and proper.

        Respectfully submitted,

        */s/ Nathaniel Peter Holzer*
        Nathaniel Peter Holzer
        State Bar No. 00793971; SD #21503
        **JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**
        500 North Shoreline Blvd, Suite 900
        Corpus Christi, TX 78401-0341
        Telephone:    361.884.5678
        Facsimile:    361.888.5555
        Email: pholzer@jhwclaw.com
        **PROPOSED BANKRUPTCY COUNSEL TO DEBTORS**